UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| LOUIS R. ZEMEK, JR., | ) | Case No.: | 09-15265-JDW |
| | ) | | |
| DEBTOR. | ) | Chapter 7 | |

| | | | |
|---|---|---|---|
| LAWRENCE EDWARDS, LERAH EDWARDS, and RAE MURPHREE, | ) ) ) | | |
| PLAINTIFFS | ) ) | | |
| v. | ) ) | A.P. No.: | 11-01012-JDW |
| LOUIS R. ZEMEK, JR., | ) ) | | |
| DEFENDANT. | ) | | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding comes before the Court on a Complaint Objecting to Discharge of Debtor and Other Relief filed by Lawrence Edwards, his wife, Lerah Edwards, and Rae Murphree (collectively, the "Plaintiffs") on January 27, 2011. Appearing at the final hearing on August 1, 2013, were Jason D. Herring, counsel for the Plaintiffs, and T.K. Moffett, counsel for Louis R. Zemek, Jr., the Debtor/Defendant (the "Debtor"). The Debtor, Lawrence Edwards, Rae Murphree, and Robert L. Kingsley also appeared and testified at the hearing. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. §157(b)(2)(B),(I) and (J).

The Complaint alleged that certain debts owed to the respective Plaintiffs are nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6), and that the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5), (a)(6),

1

and (a)(7).[1] In the Pretrial Order, formulated by the parties following a pretrial conference and entered by the Court on February 26, 2013 (Doc. 70), the Plaintiffs abandoned their arguments under § 523(a)(6) and § 727(a)(3) and (a)(6), and the trial was conducted on the remaining counts. At the close of the Plaintiff's case, the Debtor moved for a judgment as a matter of law. With no objection from the Plaintiffs, the Court granted the Debtor's motion as to the Plaintiffs' allegations under § 523(a)(2)(A), (a)(2)(B), and (a)(4) and § 727(a)(3), (a)(5), and (a)(7). In addition, the Court dismissed Lerah Edwards's claims, because the parties agreed that the Debtor did not owe Mrs. Edwards any money. At the close of the hearing, the Court took the remaining matters under advisement. The Court must decide (1) whether the remaining Plainitffs hold valid claims against the Debtor, and (2) whether the Debtor's discharge should be denied under § 727(a)(2) and/or (a)(4). The Court has considered the pleadings, testimony, admitted evidence and the applicable law, and finds and concludes as follows.[2]

## I. <u>FINDINGS OF FACT</u>[3]

Plaintiff Lawrence Edwards raised Holstein cows and has been in the cattle and dairy business in Lee County, Mississippi, for over 40 years. In the summer of 2007, the Debtor was seeking to enter the dairy business, and Mr. Edwards was seeking to leave it. Mr. Edwards met the Debtor around that time through Plaintiff Rae Murphree, who had himself recently met the Debtor while Mr. Murphree was working on a project at Mississippi State University. Mr. Murphree does business as NE MS Dairy Supply, based in Smithville, Mississippi. Mr. Murphree sells, installs, and services poultry and dairy equipment, and he began doing so in July

---

[1] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.
[2] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.
[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

2

of 1968. The Court finds that the Debtor told the Plaintiffs that he had $1.6 million available to begin his dairy farm operation. The Debtor testified that he never told the Plaintiffs this, because his personal resources were worth much less, but the Court finds the testimony of Mr. Edwards and Mr. Murphree to be more credible on this issue.

### A. Claim of Plaintiff Lawrence Edwards.

Sometime in 2007, the Debtor expressed interest in purchasing dairy cattle from Mr. Edwards. A third party subsequently contacted Mr. Edwards about purchasing his cattle, but, after contacting the Debtor again, Mr. Edwards decided to sell his cattle to the Debtor instead at the price of $1,700.00 per head. The Debtor paid Mr. Edwards a down payment of $20,000.00 in 2007, and, although Mr. Edwards did not request it, the Debtor paid an additional installment of $70,000.00 in February 2008, which Mr. Edwards accepted, for a total prepayment of $90,000.00. Mr. Edwards was later injured and one of his farm hands quit, so in late March, 2008, Mr. Edwards was no longer able to care for his cattle, and he arranged to deliver 101 Holstein cows and 2 bulls to the Debtor. The Debtor testified that he never intended to purchase all 103 head of cattle at $1,700.00 each, but the Court finds Mr. Edwards's testimony regarding the parties' agreement for the purchase and sale of the cattle to be more credible. In addition, regardless of what the prior understanding of the Debtor and Mr. Edwards was, it is undisputed that the Debtor accepted delivery of 101 Holstein cows and 2 bulls on or around March 29, 2008.

The Debtor treated the cows as his own and never sought to return the cows to Mr. Edwards. After taking possession, the Debtor sold, bartered, pledged and/or was in possession of the cows at the time of their death. There was no written agreement for the purchase and sale of the cattle, the Debtor did not sign a promissory note, and Mr. Edwards did not retain a security interest in the cattle he sold to the Debtor. The Court finds, based on the credible testimony of Mr.

3

Edwards, that the total price for the cattle was $175,100.00. After applying the $90,000.00 down payment, a balance of $85,100.00 remains, for which Mr. Edwards has a general, unsecured claim in the Debtor's bankruptcy case.

In addition to the cattle, Mr. Edwards also sold the Debtor various equipment for use in the Debtor's dairy operation. This equipment consisted of $1,500.00 for a water pump, $700.00 for rails, $200.00 for spray heads, $200.00 for steel pipe, and $4,500.00 for a feed wagon, for a total of $7,100.00 in other equipment. The Debtor agreed that he accepted delivery of all of this equipment, but both Mr. Edwards and the Debtor agreed that the feed wagon had been returned to Mr. Edwards and that this claim should be reduced by $4,500.00. Accordingly, the Debtor owes Mr. Edwards an additional $2,600.00, which shall also be treated as a general, unsecured claim in the Debtor's bankruptcy case, for a total claim of $87,700.00.

B. **Claim of Plaintiff Rae Murphree.**

The Debtor and Rae Murphree entered into a verbal agreement, pursuant to which Mr. Murphree would assist the Debtor in designing, installing, and setting up the Debtor's dairy facitlies. The Debtor agreed to pay Mr. Murphree $30.00 an hour, plus 40 cents a mile for his services. Used equipment would be sold to the Debtor with no mark-up, but a mark-up would be applied to new equipment brokered by Mr. Murphree. The Debtor paid Mr. Murphree a total of $150,000.00 over the course of their dealings, and the Court finds, based on Rae Murphree's credible testimony and documents admitted into evidence, that, at the time the Debtor filed his bankruptcy petition, the Debtor owed Rae Murphree $44,654.94 for equipment, $8,499.54 for supplies, and $32,070.00 for labor. These amounts remain unpaid and are excusive of the $6,750.00 the Debtor owes to Jimmy Gibson and the $450.00 the Debtor owes to Kenneth Graves for an appraisal, as these amounts are owed to third parties by the Debtor and Mr.

4

Murphree did not advance these costs. Mr. Murphree is also not entitled to interest, as there is no agreement that provides for interest to be charged to the Debtor. Accordingly, Mr. Murphree holds a general unsecured claim in the Debtor's bankruptcy case in the amount of $85,224.48.

### C. Debtor's Claim for Credit of Offset.

The Debtor contends that his dairy operations failed not due to his lack of experience or resources or even bad luck or the bad economy, but rather because Mr. Edwards delivered sick cows for which he was unprepared and because Mr. Murphree provided faulty equipment. The Debtor argues that because of this, he has a claim for setoff against amounts owed by him to both Mr. Edwards and Mr. Murphree. However, except as set forth above, the evidence does not support the Debtor's defense to the claims. Mr. Edwards credibly testified that the herd was generally healthy, and any elevated bacteria in the milk could have been attributed to a single sick cow, for which he was willing to work with the Debtor, but the Debtor declined. Mr. Murphree was tasked with finding used equipment, when possible, to assist the Debtor in starting up his farm at the lowest possible cost.

Mr. Murphree did that; the Debtor cannot now complain that the used equipment he purchased at a fraction of the cost of new equipment was not in brand-new condition. No party testified that any of the cows or equipment came with any warranty, and the Court finds based on the testimony of all the parties that the cows and equipment were sold to the Debtor "as-is." The Plaintiffs' testimony was that they provided all they had contracted to provide to the Debtor, and that the failure of the Debtor's operation was due either to the inadequacy of the Debtor's facilities, his inexperience, and/or his undercapitalization. The Court agrees with the Plaintiff, and finds that the Debtor is not entitled to any setoff against the claims of the Plaintiffs.

### D. Debtor's Funding.

The Debtor held a power of attorney from his wife's grandmother, Margie R. Gerrard, and the funds he used to start up his dairy farm, including funds used to pay Mr. Murphree and Mr. Edwards, were Mrs. Gerrard's funds. Although the Debtor has at all times maintained that he thought he had permission to use those funds, the Chancery Court of Coahoma County, Mississippi, disagreed and entered judgment against the Debtor in the principal amount of $615,691.28 for breach of his fiduciary duty to Mrs. Gerrard. This Court entered an agreed judgment of nondischargeability as to the debt owed to Mrs. Gerrard on February 19, 2010. (Bk. Doc. 47).[4] Pursuant to the chancery court order, the Debtor and his corporation, Laz Daze Farms, Inc.("LDF"), gave a deed of trust on the real property used as his dairy farm to Mrs. Gerrard and her trustees, on October 9, 2009.

## II. CONCLUSIONS OF LAW

Although the Court finds that the Plaintiffs do have valid claims in the Debtor's bankruptcy case, the inquiry does not end there. The chapter 7 trustee in the Debtor's underlying case has already filed his report of no distribution, confirming that there are no assets available for a distribution to unsecured creditors in the main bankruptcy case. Unless the Debtor is denied a discharge under the Plaintiffs' remaining claims under § 727, the Plaintiffs' general unsecured claims will be worthless and the Plaintiffs will not receive any recovery on those claims.

### A. Exceptions to Discharge, Generally.

The policy behind the Bankruptcy Code is to provide debtors with a "fresh start." *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 673. (5th Cir. 2012). Accordingly, the Bankruptcy Code "requires discharge of the debtor unless a statutory exception applies." *The Cadle Co. v. Duncan*

---

[4] Pursuant to Federal Rule of Evidence 202, the Court may take judicial notice of the content of its own files. See *ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981).

6

*(In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009); 11 U.S.C. § 727. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the objecting creditor. *Duncan*, 562 F.3d at 695. Grounds for denial of a debtor's discharge are limited to those set forth in § 727, and any grounds not expressly included in § 727 are "excluded by implication." *Patterson Dental Co. v. Mendoza (In re Mendoza)*, 16 B.R. 990, 993 (Bankr. S.D. Cal. 1982)(citing *In re Cairone*, 12 B.R. 60, 63 (Bankr. R.I. 1981)). The party seeking denial of a debtor's discharge "bears the burden of establishing the elements that would prevent discharge." *Laughlin v. Nouveau Body and Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010)(citing *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005)). The Plaintiffs are now seeking denial of the Debtor's discharge pursuant to § 727(a)(2) and/or § 727(a)(4) of the Bankruptcy Code.[5]

### B. Exception to Discharge under 11 U.S.C. § 727(a)(2).

Section 727(a)(2) provides that a court shall grant a debtor a discharge unless, among other reasons,

> [T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

To establish that discharge should be denied under § 727(a)(2)(A), a creditor must prove four elements: (1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one

---

[5] The grounds for challenging dischargeability of a particular debt under § 523(a) are different from the grounds for challenging the debtor's entitlement to a general discharge under § 727(a). *Hass v. Hass (In re Hass)*, 273 B.R. 45 (Bankr. S.D.N.Y. 2002). A judgment for the plaintiff-creditor on a § 523(a) claim results in the nondischargeability of a particular debt to that creditor. 11 U.S.C. § 523. A judgment for the plaintiff on a § 727(a)

7

year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Laughlin*, 602 F.3d at 421 (citations omitted). Absent a debtor's specific intent to defraud creditors, a discharge should not be denied. *Moreno v. Ashworth (In Moreno)*, 892 F.2d 417 (5th Cir. 1990). While the other elements of the § 727(a)(2) are fairly straightforward, the Fifth Circuit Court of Appeals has adopted a six-factor test to evaluate evidence of intent to defraud under § 727(a)(2):

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Duncan*, 562 F.3d at 698 (citations omitted). The Court will examine each transfer of property identified by the Plaintiffs in light of these elements and factors.

1. **Transfers of real property.**

The Debtor transferred 137.61 acres in Calhoun County, Mississippi, from himself, individually, to his corporation, LDF, on January 12, 2009. This property was the site of the Debtor's dairy operation. This transaction was clearly a transfer of the Debtor's property within one year of the filing of the petition. However, the Plaintiff did not pursue this transfer at the hearing, and there was no evidence or testimony regarding the Debtor's reasons for transferring this property, nor any evidence of a specific intent by the Debtor to hinder, delay, or defraud his creditors by the transfer of this property.

On October 9, 2009, the Debtor and LDF granted a deed of trust on the above-referenced real property to Richard B. Lewis, Sr., as Trustee for Margie R. Gerrard. This deed of trust was

---

claim results in the Debtor receiving no discharge at all. 11 U.S.C. § 727(a).

granted pursuant to an order of the Coahoma County Chancery Court to secure the debt owed by the Debtor to Margie Gerard. Accordingly, any transfer represented by this deed of trust was not done with the intent to hinder, delay, or defraud a creditor; rather it was done in order to comply with a court order and to secure the repayment of a debt to a creditor.

### 2.     Sale of 26 Holstein cows on September 28, 2009.

The Debtor sold 26 of his Holstein dairy cows on September 28, 2009, just two weeks prior to the filing of his bankruptcy petition. Accordingly, the Plaintiffs have proven the first three elements with regard to this sale. The remaining element—that such transfer was done with the intent to hinder, delay or defraud a creditor or officer of the estate—is not so easily met. The Plaintiffs have produced no evidence that the Debtor sold the cows with the intent to defraud the Plaintiffs or any other creditors of the Debtor. In fact, the only evidence regarding the transfer of the cows was the Debtor's testimony. The Debtor testified credibly that he sold the cows because he needed the money to fund his dairy operations, and that he reinvested all of the proceeds from the sale of the cows into the dairy operation. No evidence rebutting the Debtor's testimony was presented. The cows were sold at auction, and the consideration appears adequate. There was no evidence of any relationship between the Debtor and the purchaser of the cows, and the Debtor did not retain possession, benefit, or use of the cows after the sale. The Debtor was in poor financial condition at the time of the sale, and remained so thereafter, as evidenced by his bankruptcy filing and by his testimony that the reason he sold the cows was because he needed the money to fund his dairy operations. Neither the fifth nor sixth factor is significant in this case, because this was a single transaction that the Debtor credibly testified was an attempt by him to salvage his dairy operation by reinvesting the money obtained from the sale of the cattle back into the operation.

The Plaintiffs complain because the Debtor's wife, Anna Zemek, was listed as the seller of the cattle, alleging that this is evidence of an attempt to defraud the Debtor's creditors. The Debtor explained that the reason for Mrs. Zemek being listed as the seller is because she would be picking up the check at the close of the sale. The Court is satisfied with this explanation, and concludes that is does not indicate fraud. Finally, Plaintiffs assert that this sale was the sale of Mechanics Bank's collateral (the cows) without payment of the proceeds to the bank. Mechanics Bank has not pursued this claim, although it is clear that the bank had a lien on 100 Holstein cows owned by the Debtor. In short, this is not the Plaintiffs' argument to make.

3. **Transfer of 4 cows to Dwight Henderson / Post-petition sale of 4 cows by Dwight Henderson on October 4, 2010.**

Dwight Henderson sold four dairy cows at Peoples Livestock Auction in Houston, Mississippi, on October 4, 2010. Robert L. Kingsley's credible, unrebutted testimony was that the cows Mr. Henderson sold had been previously owned by Lawrence Edwards. The Debtor's credible, unrebutted testimony was that he had transferred the cows to Mr. Henderson sometime prior to that date as payment for Mr. Henderson's work on the Debtor's dairy farm. As it is unclear when the transfer of the cows from the Debtor took place, the Plaintiffs did not prove that the transfer of the cows to Mr. Henderson was completed post-petition. In addition, there was no evidence presented that the cows were transferred to Mr. Henderson by the Debtor with any intent to hinder, delay or defraud the Debtor's creditors. In fact, the Debtor credibly testified that the transfer was made as payment to one of his creditors – Mr. Henderson. The fact that the Debtor picked up the payment for the four cows sold by Mr. Henderson is of no moment, as the check was made payable to Mr. Henderson and not to the Debtor.

C. **Exception to Discharge under 11 U.S.C. § 727(a)(4)**

Section 727(a)(4) provides that the court may deny a discharge to a debtor in the event

10

that

> [T]he debtor knowingly and fraudulently, **in or in connection with the case** –
> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs;

11 U.S.C. § 727(a)(4)(emphasis added).

The Plaintiffs advanced arguments under both § 727(a)(4)(A) and (a)(4)(C). The purpose of § 727(a)(4)(A) "is to assure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examinations or investigations to determine whether the information provided is true." *Armento v. Armento (In re Armento)*, 127 B.R. 486, 490-91 (citations omitted). In order to prevail on an objection to a debtor's discharge under § 727(a)(4)(A), the objecting party has the burden of proving that "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001)(citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)). "False oaths sufficient to justify the denial of discharge include (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef*, 966 F.2d at 178 (citation omitted).

In this case, the Plaintiffs have pointed to no false statements they allege that the Debtor has made under oath, nor have the Plaintiffs identified any false statements or omissions in the Debtor's schedules or statements filed in his bankruptcy case. Accordingly, the Plaintiffs have

failed to meet the first element required to prove that the Debtor's discharge should be denied under § 727(a)(4)(A). The Plaintiffs' claim that the Debtor's discharge should be denied under § 727(a)(4)(C) also fails. In order to prevail under this subsection, a creditor must prove that "the debtor knowingly and fraudulently, in or in connection with the case gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage for acting or forbearing to act." 11 U.S.C. § 727(a)(4)(C). This statute is generally considered as prohibiting a discharge for debtors who give or offer a bribe or participate in extortion in connection with their bankruptcy case. 6 *Collier on Bankruptcy* ¶ 727.06 (16th ed. 2013). The Plaintiffs allege that the Debtor's pre-petition interactions with them and with Mrs. Gerrard (which resulted in the chancery court judgment and the nondischargeable judgment in the Debtor's bankruptcy case) form the basis of their complaints under this subsection. This argument fails because, as a threshold matter, the Debtor's actions complained about occurred before the Debtor filed his bankruptcy petition, and, as such, were not done "in or in connection with the case," as required by § 727(a).[6] *In re Fries*, 436 B.R. 26, 28 (Bankr. W.D. Ky. 2010)("This Section of the Bankruptcy Code applies only to fraudulent actions 'in connection with the case . . . ", not actions that may have occurred prior to the commencement of the case.")(citing *In re Tyrrell*, 363 B.R. 581 (Bankr. D.N.D. 2005); *In re Riposo*, 59 B.R. 563 (Bankr. N.D.N.Y. 1986)). Thus, any fraudulent, pre-petition actions by the Debtor through which he sought to obtain money from Mrs. Gerrard, the Plaintiffs, or any other source, cannot be the basis for denial of the Debtor's discharge under § 727(a)(4)(C).

---

[6] In addition to the reasons cited above, Plaintiffs' § 727(a)(4)(A) claim also fails for this reason.

### III. <u>CONCLUSION</u>

The Plaintiffs' strongest claims in this adversary proceeding were their claims of nondischargeabilty based on the Debtor's fraud under § 523(a)(2)(A) or (B); however the facts of this case do not satisfy the elements of either of these subsections. In order for this Court to find the debts to the Plaintiffs nondischargeable, the Plaintiffs would have had to prove, among other things, that the Debtor made false representations to the Plaintiffs in writing regarding his financial condition, or that the Debtor made oral false representations to the Plaintiffs regarding any other material issue. 11 U.S.C. § 523(a)(2). In this case, the Court found that the Debtor made only *oral* false representations to the Plaintiffs *respecting his financial condition* (*i.e.*, the amount of money he had available to invest in his dairy operation), so the § 523(a)(2) claims fail as a matter of law. *See, In re In re Bandi*, 683 F.3d at 673 (citing *Field v. Mans*, 516 U.S. 59, 76-77)(indicating that a statement regarding a debtor's bank balance is a statement respecting financial condition)). Representations other that those concerning financial condition could be oral and still satisfy the elements of § 523(a)(2)(A), but there were none in this case. Therefore, as the Plaintiffs conceded at trial, judgment as a matter of law was due to be granted with regard to the Plainitffs' nondischargeability claims under § 523(a)(2).

Finally, as set forth above, the Plaintiffs have not proven pursuant to § 727(a)(2) that any relevant transfers made by the Debtor were made with the specific intent to hinder, delay, or defraud his creditors, nor were the Plaintiffs able to prove any misconduct of the Debtor in or in connection with *the bankruptcy case* sufficient to deny the Debtor a discharge under § 727(a)(4). Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that while plaintiffs hold valid unsecured claims in this case, judgment shall be granted in favor of the Debtor as to all dischargeability

issues, and the Debtor's general discharge shall be entered. A separate final judgment shall be entered contemporaneously herewith.

Dated this 30th day of August, 2013.

/s/ Jason D. Woodard

Jason D. Woodard
United States Bankruptcy Judge